UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------- X

NYU HOSPITALS CENTER,                                    :
                                                        :
               Plaintiff,                            :
                                                        :
               v.                                    :   Case No._____
                                                        :
LEAGUE OF VOLUNTARY HOSPITALS AND HOMES OF               :
NEW YORK; 1199SEIU UNITED HEALTHCARE WORKERS             :   **COMPLAINT**
EAST; 1199SEIU NATIONAL BENEFIT FUND FOR HEALTH          :
AND HUMAN SERVICE EMPLOYEES; THE MOUNT SINAI             :
HOSPITAL; MONTEFIORE HEALTH SYSTEM, INC.; NEW            :   **JURY TRIAL**
YORK-PRESBYTERIAN HOSPITAL; LONG ISLAND JEWISH           :   **DEMANDED**
MEDICAL CENTER,                                          :
                                                        :
               Defendants.                           :

-------------------------------------------------------------------------------- X

      Plaintiff NYU Hospitals Center ("NYU Hospital"), by and through its undersigned

counsel, Cleary Gottlieb Steen & Hamilton LLP, alleges as follows:

## INTRODUCTION

      1.     NYU Hospital, a not-for-profit hospital comprised of three inpatient acute-care

hospitals and outpatient locations in the New York City Metropolitan Area, is one of the nation's

premier academic medical centers.  Its mission is achieved through an integrated academic

culture devoted to excellence in patient care, education, and research.  NYU Hospital brings this

lawsuit because competing hospitals in New York City and the union representing many of their

employees have agreed to impose tens of millions of dollars in punitive charges on NYU

Hospital for no reason other than that NYU Hospital has exercised its right under federal law to

break away from the industry's trade association and negotiate its own future labor contracts.

      2.     For many years, NYU Hospital was a member of Defendant League of Voluntary

Hospitals and Homes of New York (the "Hospital League").  During that time, the Hospital

League negotiated collective bargaining agreements on behalf of NYU Hospital and its competitors with another defendant in the case, the labor union known as 1199SEIU United Healthcare Workers East ("1199SEIU"), which represents thousands of healthcare workers in the metropolitan area.  NYU Hospital became dissatisfied with the manner in which the Hospital League represented its interests and determined that it could likely negotiate a better labor agreement in the future on its own.  On March 28, 2016, it provided notice to the Hospital League that it was withdrawing from the association and would not participate in future collective bargaining negotiations conducted by the League.  NYU Hospital made it clear that it would continue to abide by the collective bargaining agreement currently in effect until it terminates in 2018.

3.      The March 28 notice triggered the events that are the subject of this lawsuit.  With the encouragement and acquiescence of Defendant 1199SEIU, Defendant Hospital League, and Defendant hospitals, Defendant 1199SEIU National Benefit Fund for Health and Human Service Employees (the "Benefit Fund") – the fund that is jointly administered by an equal number of employer and union trustees – determined that NYU Hospital would be required to make millions of dollars of additional contributions per month into the Benefit Fund.  NYU Hospital has been making these payments under protest.  These payments do not result in any additional benefits for NYU Hospital's employees and otherwise have no business justification.  They simply impose higher costs on the hospital.  This harms competition because these wasteful costs reduce NYU Hospital's ability to be more efficient and to offer new and better services to its patients in competition with other area hospitals.

4.      This penalty not only affects the ability of NYU Hospital to compete but also serves as a threat to any other departing member of raising their costs by millions of dollars, thus

discouraging any Hospital League member from withdrawing from the League and competing on its own. It perpetuates an entrenched trade association that fails to protect the interests of all its members, aligns the competing hospitals in New York City at a more uniform cost structure, and makes the industry less competitive.

5.     For these reasons, this agreement among the Hospital League, the Defendant hospitals, 1199SEIU, and the Benefit Fund to impose a penalty on NYU Hospital for withdrawing from the Hospital League violates Section One of the Sherman Act, 15 U.S.C. § 1. NYU Hospital seeks an injunction prohibiting Defendants from continuing their unlawful agreement, treble damages under Section 4 of the Clayton Act, restitution of its excessive payments to the Benefit Fund, and the costs of this lawsuit.

## PARTIES

6.     NYU Hospital is a not-for-profit hospital organized under the laws of the State of New York with its principal place of business in the City and County of New York. It is located at 550 First Avenue, New York, NY 10016. NYU Hospital is comprised of Tisch Hospital, the Hospital for Joint Diseases Orthopaedic Institute, the NYU Lutheran Medical Center, and other authorized locations listed in its operating certificate.

7.     NYU Hospital is one of the major inpatient acute-care hospitals in the City of New York and the New York City Metropolitan Area.

8.     Defendant Hospital League is an unincorporated trade association with its principal offices and place of business located in the City and County of New York at 555 West 57th Street, Suite 1530, New York, NY 10019. Its members include (a) nonprofit hospitals and nursing homes in the New York City Metropolitan Area that are eligible for membership in the Greater New York Hospital Association, Inc. and that have union employees; (b) medical

schools affiliated with those hospitals that have union employees; and (c) certain other healthcare-related institutions.

9. Defendant 1199SEIU is a labor organization within the meaning of section 2(5) of the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 152(5), with its principal offices and place of business located in the City and County of New York at 310 West 43rd Street, New York, NY 10036.

10. Defendant 1199SEIU National Benefit Fund for Health and Human Service Employees is a jointly administered trust fund within the meaning of section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), an employee welfare benefit plan within the meaning of section 3(1) of ERISA, 29 U.S.C. § 1002(1), and a multiemployer benefit plan within the meaning of section 3(37) of ERISA, 29 U.S.C. § 1002(37). The Benefit Fund is administered by an equal number of employer and 1199SEIU representatives ("Trustees") and an executive director for the purpose of providing health insurance and other benefits to employees represented by 1199SEIU. The Defendant Benefit Fund and its Trustees are governed by and serve pursuant to the Benefit Fund Agreement and Declaration of Trust, Amended and Restated as of December 10, 2014 (the "Trust Agreement"). Its principal offices and place of business are located in the City and County of New York at 330 West 42nd Street, New York, NY 10036.

11. Defendant Mount Sinai Hospital is a not-for-profit hospital with its principal offices and place of business in the City and County of New York. It is located at One Gustave L. Levy Place, New York, NY 10029. Defendant Mount Sinai Hospital is a member of the Hospital League.

12. Defendant Montefiore Health System, Inc. is a not-for-profit hospital corporation with its principal offices and place of business in Westchester County in the State of New York.

It is located at 555 South Broadway, Tarrytown, NY 10591. Its main hospital, Montefiore Medical Center, is located in Bronx County in the City of New York at 111 East 210th Street, Bronx, NY 10467. Defendant Montefiore Health System, Inc. is a member of the Hospital League.

13.     Defendant New York-Presbyterian Hospital is a not-for-profit hospital with its principal offices and place of business in the City and County of New York. It is located at 525 East 68th Street, New York, NY 10021. Defendant New York-Presbyterian Hospital is a member of the Hospital League.

14.     Defendant Long Island Jewish Medical Center is a not-for-profit hospital with its principal offices and place of business in Queens County in the City of New York. It is located at 270-05 76th Avenue, New Hyde Park, NY 11040. Defendant Long Island Jewish Medical Center is part of Northwell Health, Inc. and is a member of the Hospital League.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because NYU Hospital's claims arise under the laws of the United States. The Court also has subject matter jurisdiction under 15 U.S.C. § 15 and 28 U.S.C. § 1337, insofar as the allegations of the Complaint assert claims for violations of the federal antitrust laws, and under 29 U.S.C. § 1132(e)(1), insofar as the allegations of the Complaint assert claims arising under 29 U.S.C. § 1001 *et. seq.*

16.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391, 15 U.S.C. §§ 15 and 22, and 29 U.S.C. § 1132(e) because Defendants have resided in, transacted business in, and are found in this District, because a substantial part of the events giving rise to the violations alleged in this Complaint occurred in this District, because a substantial portion of the affected

interstate trade and commerce described in this Complaint has been carried out in this District, and because the relevant market and the effects of the anticompetitive actions of Defendants are in this District.

17.     This Court has personal jurisdiction over Defendants because Defendants (a) have their principal offices and places of business within this District, (b) have transacted business in this District, (c) have substantial contacts in this District, (d) have engaged in unlawful activities in this District, and (e) have caused injury to NYU Hospital in this District.

## FACTUAL BACKGROUND

### The Hospital League's Representation of Competing Hospitals

18.     The Hospital League is a trade association of hospitals, nursing homes and certain other healthcare-related entities.  Its purpose is to promote the general welfare of its members and perform functions relating to labor relations, collective bargaining, and personnel administration.

19.     The Hospital League has acted as a multiemployer bargaining representative for its member hospitals and nursing homes who, by virtue of their status as association members, have authorized the Hospital League to serve as their agent for collective bargaining with 1199SEIU.  The President of the Hospital League, Bruce McIver, acts as the bargaining representative for this multiemployer bargaining unit.

20.     For years prior to this action and until March 28, 2016, NYU Hospital was a member of the multiemployer bargaining unit represented by the Hospital League for purposes of collective bargaining with 1199SEIU.  The other Defendant hospitals also were, and are, members of this multiemployer bargaining unit.

21.     Under federal labor law, once a multiemployer bargaining unit is formed, the employers' representative is authorized to enter into a collective bargaining agreement with the participating union governing wages, hours, and working conditions for union-represented employees.  This agreement is binding on each employer that authorized the multiemployer bargaining.

22.     In or about July 2009, the Hospital League and 1199SEIU entered into a collective bargaining agreement that was in effect for a term of June 1, 2009 through April 30,

2015 (the "2009 League CBA").  NYU Hospital and the Defendant hospitals were all parties to this agreement.

23.     Under federal labor law, when a member of a multiemployer bargaining unit gives timely written notice of an intent to withdraw from multiemployer bargaining to its bargaining representative and to the participating union, it is no longer required to bargain with the union through that representative and is no longer bound by any subsequent agreement the representative might make with the union.

**The 2014 MOA**

24.     During the term of the 2009 League CBA, the Hospital League entered into negotiations with 1199SEIU for a successor agreement to the 2009 League CBA.  By a Memorandum of Agreement, dated July 21, 2014 (the "2014 MOA"), the 2009 League CBA was modified and extended through September 30, 2018.

25.     Each hospital member of the multiemployer bargaining unit was an "Employer" within the meaning of the 2014 MOA and as such was required to comply with all of its contractual obligations and was entitled to receive all of its benefits.  In 2014, NYU Hospital was a member of the multiemployer bargaining unit and was bound as a hospital employer by the terms of the 2014 MOA through its expiration in September 2018.  The Defendant hospitals were also parties to this agreement.

26.     Under the 2014 MOA, the stated contribution rate to the Defendant Benefit Fund from hospital employers was set as of October 1, 2014, at 29.99% of each employee's wages, rising over time to 36.15% as of October 1, 2017.  A maximum contribution or cap on contributions was also set such that, as of October 1, 2014, no hospital employer was required to contribute to the Benefit Fund more than $14,000 a year for any employee.  The cap rose to

$17,180 as of October 1, 2017, but was reduced to $14,000 as of September 30, 2018, the expiration date for the 2014 MOA.

27.     The cap on Benefit Fund contributions is a significant benefit to NYU Hospital and the other hospitals represented by the Hospital League in the 2014 labor negotiations because these hospitals employ relatively large numbers of higher-paid employees compared to nursing homes and other non-hospital healthcare institutions.  Without the cap, these hospitals would be making disproportionately large contributions to the Benefit Fund, and their contributions would substantially exceed the benefits actually provided to their employees.  The cap was a major issue in the 2014 negotiations to extend the 2009 collective bargaining agreement.

28.     The reversion of the cap on Benefit Fund contributions to $14,000 as of September 30, 2018 is also a significant benefit to NYU Hospital and the other member hospitals because, under federal labor law, parties are required to comply with the terms of a collective bargaining agreement after it expires until a successor agreement is negotiated or an impasse in bargaining is reached.  Consequently, after September 30, 2018, NYU Hospital and its competitor hospitals would, as a result of the reversion to the $14,000 Benefit Fund contribution cap, save substantial labor costs pending the completion of negotiations of a new labor contract.

***The Milliman Report and the Side Letter***

29.     Following negotiation of the 2014 MOA, Defendant Benefit Fund, Defendant 1199SEIU, and Defendant Hospital League jointly requested that the actuarial firm of Milliman, Inc. ("Milliman") prepare a report that would propose a Benefit Fund contribution-rate methodology for members of the multiemployer bargaining unit represented by the Hospital League, and in particular hospital members of the bargaining unit.

30.     On October 24, 2014, Milliman issued a letter to the Benefit Fund purporting to "summarize[] the [contribution] rates agreed to in the collective bargaining process."  It also issued a report titled "Development of Contribution Methodologies," which purported to provide the contribution methodologies on which the stated rates would be based through September 30, 2018 (collectively, the "Milliman Report").

31.     For hospital employers like NYU Hospital and its competitors, the Milliman Report proposed contribution rates and per-employee maximum annual contribution amounts that were substantially the same as what was provided for in the 2014 MOA.

32.     For a group of employers whose employees were represented by the union but who were not hospital members of the League – *e.g.*, some nursing homes and other non-hospital healthcare institutions, designated as "Non-League" employers – the Milliman Report proposed a different contribution methodology.  The contribution methodology for Non-League employers established a contribution rate that was slightly lower than the rate applicable to employers who were parties to the 2014 MOA but afforded no cap on the amount of contributions to be paid for each employee.

33.     Since hospital employers like NYU Hospital and its competitors typically employ larger numbers of relatively higher-paid employees than do nursing homes and other non-hospital healthcare institutions, application of a non-capped methodology to any of the major New York City Metropolitan Area hospitals would result in substantially larger and disproportionate contributions to the Benefit Fund, even at a lower stated contribution rate, than is actually required to fund benefits for that hospital's employees.

34.     The Milliman Report included a section called "Future Movement between League and Non-League," which proposed that when "an institution moves from League to Non-

League," its contribution rate "will be adjusted by the difference between its League contribution and what it would have contributed under the Non-League methodology, effective the first full month after it reclassified." This proposal was based on neither the language of the 2014 MOA nor on an actuarial assessment of the cost of benefits likely to be paid to employees of a hospital that moves from League to Non-League status.

35.     On October 24, 2014, the same day the Milliman Report was issued, the Hospital League and 1199SEIU entered into a letter agreement (the "Side Letter") that modified the 2014 MOA.  The Side Letter changed the contribution-rate methodology to be used in calculating contributions to the Benefit Fund to incorporate the cap and a flat rate methodology set forth in the Milliman Report for League-represented employers, including NYU Hospital.  The Side Letter made no reference to the portions of the Milliman Report relating to future movement of employer parties from or to Non-League employers.

*NYU Hospital's Resignation from the Hospital League*

36.      By letter dated March 28, 2016 to Defendant Hospital League (the "Resignation Letter"), NYU Hospital resigned its membership in the Hospital League and thereby withdrew authority from the Hospital League to bargain on its behalf in future multiemployer bargaining with 1199SEIU.  NYU Hospital also provided a copy of the Resignation Letter to Defendant 1199SEIU.

37.     NYU Hospital's resignation from the Hospital League trade association was in accordance with NYU Hospital's rights under Article III, Section 1 of the Hospital League's Bylaws, which permits members to resign "at any time except during the ninety days prior to the expiration of a collective bargaining agreement."

38.     NYU Hospital's withdrawal of its multiemployer bargaining authority from the Hospital League trade association was timely and effective under federal labor law but did not terminate NYU Hospital's rights and obligations as an employer bound by the 2014 MOA or its obligation to continue paying dues to the Hospital League until the expiration of the 2014 MOA.

39.     In an undated letter sent in early August 2016, 1199SEIU's General Counsel, Daniel Ratner, instructed the Benefit Fund's Executive Director, Mitra Behroozi, to recalculate NYU Hospital's Benefit Fund contribution obligations using the "non-League methodology" proposed in the Milliman Report (the "Ratner Letter").  Bruce McIver, the Hospital League's President and bargaining representative, was aware of and copied on the Ratner Letter.  The only stated basis for this instruction was that NYU Hospital had withdrawn future multiemployer bargaining authority from the Hospital League trade association.

40.     Although NYU Hospital objected to the application of this higher contribution obligation, on August 16, 2016, the Benefit Fund notified NYU Hospital by e-mail of its decision to accede to 1199SEIU's instruction and that, following recalculation by the Fund's actuaries at Milliman, NYU Hospital would be required to make contributions pursuant to the "non-League methodology" beginning on October 1, 2016.  On or about September 30, 2016, the Benefit Fund issued letters to all of NYU Hospital's billing units with revised Benefit Fund contribution amounts, which established an aggregate increase of approximately $25 million or more in annual Benefit Fund contributions for NYU Hospital.

41.     The imposition of this penalty payment is the result of anticompetitive concerted action by the Hospital League, the Defendant hospitals, 1199SEIU, and the Benefit Fund, all of whom have encouraged and acquiesced in the imposition of higher benefit contributions on NYU Hospital.  This concerted action has imposed and continues to impose ongoing costs of tens of

millions of dollars per year on NYU Hospital, with no benefit to NYU Hospital employees and no other business justification.  This additional cost will continue after the expiration of the current collective bargaining agreement because NYU Hospital will be required by the Benefit Fund to continue making the penalty payments until it is able to negotiate a new agreement with 1199SEIU, a process that is often lengthy.

42.     This penalty payment impairs and will continue to impair the hospital's ability to compete and also discourages all Hospital League members from withdrawing and competing on their own.  It perpetuates an entrenched trade association that fails to protect the interests of all of its members, aligns the competing hospitals in New York City at a more uniform cost structure, and makes the industry less competitive.  This concerted conduct violates Section 1 of the Sherman Act.

43.     NYU Hospital has made and is continuing to make these higher payments under protest rather than withhold payments from the Benefit Fund in order to avoid the risk of being assessed interest, legal fees, and other penalties that could be sought by the Benefit Fund, and to avoid the risk that benefits might be denied to its employees by the Benefit Fund.

44.     In addition to the tens of millions of dollars in penalty payments NYU Hospital is making to the Benefit Fund, the 1199SEIU Health Care Employees Pension Fund (the "Pension Fund") has demanded that NYU Hospital make additional contributions to the Pension Fund in an annualized amount of approximately $2.8 million a year.  As with the Benefit Fund payments described above, the only basis for this demand is that NYU Hospital has withdrawn from the Hospital League.  This demand has no basis in the parties' collective bargaining agreement or any other agreement or provision of law, and it magnifies the anticompetitive effects of the penalty payments that NYU Hospital is making to the Benefit Fund.

45.     NYU Hospital continues to observe the terms and conditions of, and to fulfill all of its obligations as an employer under, the Hospital League-negotiated collective bargaining agreement.  NYU Hospital also continues to pay dues to the Hospital League trade association, as is required by said association's Bylaws.

46.     The imposition of penalty payments on NYU Hospital is not intimately related to wages, hours, and working conditions of 1199SEIU-represented employees, and is not a subject of immediate and legitimate concern to 1199SEIU members.  The only effect of the action is to require higher payments by a withdrawing member of the Hospital League without any corresponding benefits to employees of the withdrawing member.  It does not affect any of 1199SEIU's legitimate interests as a labor organization.   It is not needed to make the multiemployer bargaining process work.  Accordingly, the penalty is not protected by the labor exemption to the antitrust laws.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Against All Defendants)**
**UNLAWFUL AGREEMENT IN RESTRAINT OF TRADE**
**(Section 1 of the Sherman Act, 15 U.S.C. § 1)**

47.     NYU Hospital repeats and incorporates each and every allegation previously set forth in this Complaint as though fully set forth herein.

48.     By imposing the higher "Non-League" contribution-rate methodology on NYU Hospital for employee benefits, Defendants have entered into and enforced a *per se* unlawful contract, combination, or conspiracy to restrain interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Each Defendant has made, and continues to make, a conscious commitment to this unlawful scheme.

49.     Given the *per se* nature of the violation of Section 1 of the Sherman Act, allegations with respect to the relevant product market, geographic market, or market power are not required.  To the extent such allegations may at some point be deemed appropriate, the relevant product markets in which NYU Hospital competes with hospital members of the Hospital League trade association and in which Defendants' illegal agreement harms competition are the market for the provision of inpatient acute-care hospital services and the market for outpatient services sold to patients and third-party payors in the New York City Metropolitan Area.

50.     The relevant geographic market is the New York City Metropolitan Area. Inpatient acute-care hospital and outpatient services offered by hospitals outside of the New York City Metropolitan Area are not reasonable substitutes for patients or insurers for services provided by hospitals in New York City.

51.     Defendants' agreement to impose a substantial penalty on NYU Hospital and any other hospital that withdraws from the Hospital League has had and will continue to have substantial harmful effects on competition in the relevant markets.  Among other things, NYU Hospital, which in the recent past has made substantial investments in new facilities and new technology and service capabilities, is less able to make these investments; NYU Hospital's competitors are now under less competitive pressure to respond to NYU Hospital's investments; and patients are deprived of the benefits of new capacity and service improvements.  The impact on NYU Hospital's ability to invest goes far beyond $25 million per year, as the hospital also loses several times that amount in capital borrowing ability.  This penalty also serves as a disincentive for other hospitals who might otherwise withdraw from the Hospital League in order to tailor their labor contracts to their particular competitive situations.  In short, Defendants'

unlawful agreement has the effect of, among other things, removing hundreds of millions of dollars in future investments in health care capacity and improvements, all to the detriment of competition and to the welfare of patients in the New York City Metropolitan Area.

52.     Defendants' agreement does not offer any countervailing procompetitive benefits and Defendants have no legitimate justification for agreeing to and imposing this penalty. Accordingly, the agreement constitutes an unreasonable and illegal restraint of trade.

53.     Defendants have threatened to and will continue the foregoing alleged violations of Section 1 of the Sherman Act and, as a result, have already caused and will continue to cause injury to NYU Hospital and damage to competition and consumers in the relevant market unless the injunctive and other relief sought herein by NYU Hospital is granted.

## SECOND CLAIM FOR RELIEF
### (Against Benefit Fund)
## RESTITUTION FOR EXCESSIVE FUND CONTRIBUTIONS
### (Federal Common Law, ERISA, 29 U.S.C. § 1001 *et seq.*)

54.     NYU Hospital repeats and incorporates each and every allegation previously set forth in this Complaint as though fully set forth herein.

55.     To avoid claims by the Defendant Benefit Fund that NYU Hospital is liable for delinquent contributions, interest, penalties, or fees, NYU Hospital has remitted contributions in excess of the amount properly required under the collective bargaining agreement to which NYU Hospital is a party, under ERISA, under the Trust Agreement or under any other operative or controlling document governing Benefit Fund trustees.

56.     NYU Hospital has objected to the payment of the higher monthly contribution amount and has preserved its rights with respect to restitution.  NYU Hospital promptly asserted its rights and, with every monthly contribution payment, NYU Hospital has put the Benefit Fund on notice that it objects to the excess contributions.

57.     The Benefit Fund is acting arbitrarily and capriciously in refusing to refund NYU Hospital's excess contributions.

58.     Requiring the Benefit Fund to return the excess payments made by NYU Hospital will not affect the financial stability of the Benefit Fund.

59.     The Defendant Benefit Fund is not entitled to this windfall, and equity requires that NYU Hospital be restored to the financial position that it would have been in if NYU Hospital had only continued to make monthly contributions determined by the same methodology as is applied to the other hospital employers that are parties to the same multiemployer collective bargaining agreement as NYU Hospital.

## PRAYER FOR RELIEF

WHEREFORE, NYU Hospital respectfully requests as follows:

(a)      Granting Judgment in NYU Hospital's favor declaring that the agreement to impose a penalty on its withdrawal from the Hospital League is unlawful, void, and unenforceable and that application of any contribution-rate methodology different from what is applied to other hospital employer parties to the same multiemployer collective bargaining agreement as NYU Hospital is invalid and unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1;

(b)      Issuing an injunction enjoining Defendants from enforcing or attempting to enforce this illegal agreement or in any way demanding, compelling, or attempting to compel NYU Hospital to make contributions in any amount in excess of the amount as would be required according to the contribution-rate methodology applied to other hospital employer parties to the same multiemployer collective bargaining agreement as NYU Hospital;

(c)      Granting to NYU Hospital from Defendant Benefit Fund restitution of all monetary contributions made by NYU Hospital in excess of amounts that are determined by the Court to be have been proper and lawful, plus interest;

(d)      Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15a, awarding NYU Hospital treble damages for losses incurred as a result of the illegal agreement;

(e)      Awarding NYU Hospital the costs and disbursements of this action, including its attorneys' fees, as well as pre-judgment and post-judgment interest as permitted by law; and

(f)      Granting NYU Hospital such other and further relief as the Court deems just, necessary and proper.

Dated:  New York, New York
        June 14 , 2017

                              Respectfully submitted,


                              Roger A. Cooper
                              (racooper@cgsh.com)
                              CLEARY GOTTLIEB STEEN & HAMILTON LLP
                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225 2000
                              (212) 225 3999 (facsimile)


                              Attorneys for Plaintiff
                              NYU Hospitals Center


Of Counsel
     Mark Leddy, Esq.
     David I. Gelfand, Esq.
     Linden Bernhardt, Esq.
     CLEARY GOTTLIEB STEEN & HAMILTON LLP
     2000 Pennsylvania Avenue
     Washington, District of Columbia 20006
     (202) 974 1570
     (202) 974 1999 (facsimile)